JOHNSON *v.* THE CENTRAL TRUST COMPANY, RECEIVER.

[No. 19,995.   Filed January 7, 1903.]

RECEIVERS.—*Report.—Exceptions.—Pleadings.*—The report of a receiver and an exception thereto, stand as the complaint and answer of the respective parties. *p. 608.*

SAME.—*Supplemental Report.*—Where a receiver filed a final settlement report to which exceptions were taken, the filing thereafter of a supplemental report did not serve to take the first out of the record. *p. 608.*

SAME.—*Effect of Discharge of Receiver on Judgment of Allowance.*—A judgment of allowance against a fund in the hands of a receiver does not become a technical lien on the property which comprises the assets, and therefore a discharge of the receiver without any reservation as to existing claims will release, not only the receiver, but also the property, from further liability. *p. 609.*

SAME.—*Discharge of Receiver.—Collateral Provision for Payment of Claim.*—A collateral provision made by a receiver for the ultimate satisfaction of an allowance judgment against the trust fund will not justify the final discharge of the receiver before such judgment is paid, where it is not shown that the claimant was a party to the arrangement. *pp. 609-614.*

CONTRACTS.—*For Benefit of Third Person.*—A contract for the benefit of a third person does not become the contract of such person, creating a liability in his favor, until by some overt act of acceptance he elects to make the contract his. *pp. 610.*

From Johnson Circuit Court; *W. J. Buckingham,* Judge.

The Central Trust Company filed report as receiver of the estate of James T. Polk, to which Grafton Johnson filed exceptions. From a judgment discharging receiver, Johnson appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*G. M. Overstreet, E. L. Branigin, E. A. McAlpin, R. M. Miller* and *H. C. Barnett,* for appellant.

*L. J. Hackney* and *C. F. Coffin,* for appellee.

GILLETT, J.—Appellee, The Central Trust Company, being the receiver of the estate of James T. Polk, filed its

report in final settlement of said estate. The report showed that the trust property consisted of two plants and the stock on hand and accounts receivable pertaining to each. Among other debts, the receiver reported a judgment of allowance rendered in said receivership, in favor of appellant, in the sum of $9,500, for services in the matter of said trust as a former receiver thereof, which judgment it was reported had been appealed from, and that a *supersedeas* bond had been given in the sum of $12,000 in the matter of said appeal. With respect to that portion of said property that was denominated in the report as the dairy plant, the receiver reported that it had the opportunity of selling the same to responsible parties, who would assume certain liabilities, not including the judgment of appellant. The receiver further reported that it and said James T. Polk had sold the plant that was denominated in the report as the packing plant, together with all of the remaining property and assets of every sort and description belonging to said trust, to a corporation known as the J. T. Polk Company, payable by the transfer of a certain amount of the capital stock of the corporation, and that the latter had agreed to assume and pay all remaining liabilities, so far as the same might be determined to be valid. It was further stated in the report that the trust was entirely solvent. The report concluded with a prayer that the matters and things set out in said report be inquired into by the court, and, if found correct, that said receiver be discharged. The theory of said report seems to be that the financial plans set forth, and in part reported as perfected, have rendered the trust solvent, and that therefore the court should release its jurisdiction over the same.

The appellant filed exceptions to said report. These exceptions do not differ in their substance. The first alleges the obtaining of said judgment; the pendency of said appeal; that one of the errors assigned on said appeal was the overruling of a motion for a new trial made by the opposite

party therein; that if said cause should be reversed on appeal it would be returned to the Johnson Circuit Court for a second trial; and that if said trust should be terminated there would be no available property or assets out of which any judgment that might be obtained could be collected.

Appellee The Central Trust Company demurred to said exceptions for want of facts. The court sustained said demurrer, and appellant excepted. Six days later the receiver filed a report that he therein denominated as a supplemental report, showing the payment, since the filing of its final report, of certain claims, other than that of appellant, and further representing that said J. T. Polk Company had on deposit with said The Central Trust Company a balance in the sum of $2,000, with which to pay any unpaid claims that might be determined to be valid and enforceable. On the day that said supplemental report was filed an order was entered providing that, as a condition precedent to the approval of said final and supplemental reports, said receiver should file a bond, with sureties to be approved by the court, to protect the claim of appellant and all other persons having claims against said trust. A bond was thereupon reported in the sum of $20,000, signed by said James T. Polk and sureties, who justified in an ample sum, payable to the clerk of said court, for the use of said appellant and all other unpaid claimants whose claims might be finally adjudged valid. Said bond fully recited the facts, and stated that it was given in consideration of the discharge of said receiver and the release of the trust property; and said obligors agreed that "they, or either of them, may be substituted in any litigation now or hereafter pending in any of the courts of this State upon any such claim, as defendants, in lieu of said receiver," and that they would "severally enter an appearance to such litigation in such courts, and submit to such determination as may be had at the close of such litigation, and abide and pay the judgment or judgments rendered against them." Upon the presentation of

this bond, it was approved, the receiver ordered discharged, and the trust declared terminated and closed.

The report of a receiver, and an exception filed thereto, stand as the complaint and answer of the respective parties. *Brownlee* v. *Hare,* 64 Ind. 311; *Wysong* v. *Nealis,* 13 Ind. App. 165; *In re Hart,* 60 Hun 516, 15 N. Y. Supp. 239; *In re Heuser,* 87 Hun 262, 33 N. Y. Supp. 831. As said in the case last cited: "It has been many times held in these proceedings that the account filed and the objections thereto represent the pleadings of the parties, and that the issues to be tried are to be determined therefrom."

Appellee's counsel insist that the exception reserved to the ruling on the exceptions to the first report presents no question, because of the filing of the subsequent report. It is assumed by counsel that the latter report took the former report out of the record. In this assumption counsel are in error. The two reports together in effect constituted the complaint in the action, but, if the first report did not state facts sufficient to authorize the receiver's discharge, it could not be aided by the supplemental report. *Barker* v. *Prizer,* 150 Ind. 4. Particularly ought these rules of practice to be applied where the second pleading or report in nowise changes the real question, and where the exception or answer is a sufficient answer to the original and supplemental complaints or reports. See *Ellis* v. *City of Indianapolis,* 148 Ind. 70.

By obtaining a judgment of allowance against the fund, appellant obtained an equitable interest therein, and it was the duty of the court to guard such interest. Mr. High, in his work on receivers, states that the better doctrine, as deduced from the clear weight of authority and from the better legal reasoning, is that the defendant is not entitled to have the receivership terminated by the satisfaction or extinguishment of the plaintiff's demand; that the duty of the court being to protect the rights of all parties to the action, it will not permit the receiver to be discharged when

it appears that such discharge may prejudice the rights of other parties to the action who do not consent thereto. High, Receivers (3d ed.), §837.

A judgment of allowance against a fund does not become a technical lien on the property which comprises the assets, as a judgment lien is but the creature of statute, and there is no statute providing for a lien in such circumstances. *McAfee* v. *Reynolds,* 130 Ind. 33, 18 L. R. A. 211, 30 Am. St. 194. The effect, therefore, of a discharge of a receiver, and the surrender of jurisdiction over the trust, without any reservation as to existing claims, is to release not only the receiver, but also the property from further liability. *Kerr* v. *Little,* 39 N. J. Eq. 83; *Davis* v. *Duncan,* 19 Fed. 477; *Farmers, etc., Co.* v. *Central Railroad of Iowa,* 7 Fed. 537; High, Receivers (3d ed.), §848.

It has been held by this court that a decedent's estate should not be finally settled while a claim that has been filed has not been paid or disposed of. *Reed* v. *Reed,* 44 Ind. 429; *Heaton* v. *Knowlton,* 65 Ind. 255; *Roberts* v. *Spencer,* 112 Ind. 81; *Dillman* v. *Barber,* 114 Ind. 403. A number of the cases cited are cases where the claims were pending on appeal. We perceive no reason why the same rule of law should not apply to a receivership,—at least as against a claim that has the *status* of the one here involved.

Counsel for appellee contend for the authority of the court to settle a receivership with a claim pending, by making a collateral provision for its ultimate satisfaction, as was done in this case, and this seems to have been the theory on which the court proceeded in disregarding the exceptions. It is also claimed by counsel for appellee that the claims have been "disposed of," within the meaning of the authorities, and this leads us to consider the legal effect of the arrangement that is characterized as a disposition of the claims.

As heretofore stated, the contract which furnished the basis on which the order for a surrender of jurisdiction over the trust was made was a contract which provided that it should be in favor of the clerk of the court for the use of appellant and the other claimants. A contract for the benefit of a competent third person may become available to the latter, provided that it is not rescinded by the parties thereto before such third person gives notice that he accepts it. *Davis* v. *Calloway,* 30 Ind. 112, 95 Am. Dec. 671; *Carnahan* v. *Tousey,* 93 Ind. 561; *Romaine* v. *Judson,* 128 Ind. 403; *Whicker* v. *Hushaw,* 159 Ind. 1. Except where from the nature of the case a demand ought to be made before suit, as pointed out in some of the authorities cited below, the rule is that a third person may sue on a contract for his benefit, without a previous election, on the theory that the institution of suit is an election; that the election to take the benefit, which is the foundation of the right of action, and the institution of the suit, may be concurrent acts. *Copeland* v. *Summers,* 138 Ind. 219; *Carnahan* v. *Tousey, supra; Rodenbarger* v. *Bramblett,* 78 Ind. 213; *Durham* v. *Bischof,* 47 Ind. 211. But in no case does the contract become the contract of such third person, creating a liability in his favor, until by some overt act of acceptance, either by suit or otherwise, as the circumstances may admit of, he elects to make the contract his. *Davis* v. *Calloway, supra; Carnahan* v. *Tousey, supra.* It is the law that creates the necessary privity, upon the acceptance of such third party, and he thereby secures the advantages and must bear the burdens that properly belong to him as a party to the contract. *Johnson* v. *Collins,* 14 Iowa 63; *Brewer* v. *Dyer,* 7 Cush. 337; *Bohanan* v. *Pope,* 42 Me. 93.

The contract under consideration is of a nondescript character. If valid, it could not be said that appellant was a stranger to the consideration, since assets on which he had a right to rely for the satisfaction of his judgment were

ordered released in consideration of its execution.     For that reason, it would not, perhaps, assuming the validity of the contract, be revocable by the obligors and the clerk, who, as stated, was the obligee.     Appellant was, however, a stranger to the contract.     No contract, express or implied, can be created without the consent of the person to whom performance is due.     Until appellant elected to take the benefit of the instrument, it was not a contract as to him.     The clerk could not sue on the contract, as the trustee of an express trust, to recover in favor of a *sui juris* beneficiary who refused to elect to be bound by the contract; for the instrument must be enforceable as against the *cestui que trust,* so as to make him bear the burden imposed on him, or else it is lacking in mutuality.     It may therefore be said that such an instrument would be a mere offer of a contract.

The court was authorized to exercise jurisdiction over appellant's claim, but, as we have seen, the consent of the claimant was a necessary element in the formation of the contract, and this the court lacked power to enforce.     The case then amounts to this:   It was proposed by the court, without having created any present contract that it might even be contended amounted to a bringing of such obligation within the scope of the trust, but upon the mere offer of a contract, to renounce its rightful jurisdiction, and debar appellant from a remedy against the property involved in the receivership; leaving him then or subsequently to elect to accept a collateral benefit, or else to remain remediless.     Referring to the particular instrument taken, its language can not even be construed as a submission by the obligors to the jurisdiction of the court in the receivership. The instrument rather purports to contain a covenant on their part that they will appear without process in any court in which an action may be instituted against them on such bond, and the remedy for the breach of such covenant is merely the recovery of damages for failing to appear.

Appellant has a claim that he has reduced to judgment, so the presumption must be in favor of its equitable character, and the court, instead of granting him a remedy,— the very purpose for which courts are constituted, where there is a right to a remedy,—proposed to relinquish its jurisdiction and drive appellant to a remedy upon a bond, in a perhaps distant court, involving costs and attorney's fees, and possible uncertainties as to the result of the litigation, to recover against obligors that he never agreed to accept as such. Our statutes contain a number of provisions for the taking of bonds in connection with judicial proceedings where the obligee does not consent thereto. In such a case the bond owes its obligatory character to the fact that a statute provides for it. But we hold that there is no authority for a court to relinquish entire jurisdiction over the property of a receivership where a claimant has reduced his claim to judgment therein.

In *Bainbrigge* v. *Blair*, 3 Beav. 421, receiver had been appointed by reason of the misconduct and incapacity of trustees, and it was held that the receiver might be removed upon the appointment of new trustees to receive and apply the rents and profits as the receiver had been directed to do. The propriety has been seemingly recognized, in some circumstances, of turning the property over to the defendant in the action, with an express reservation of jurisdiction over the property to enforce payment, satisfaction, or discharge of the debts and liabilities of the receivership. *Farmers, etc., Co.* v. *Central Railroad of Iowa*, 7 Fed. 537; *Davis* v. *Duncan*, 19 Fed. 477. The condition of the trust might be such in some cases that the court might be justified in surrendering a part of the *corpus* of the estate to the defendant. There can be no hard and fast rule laid down for all cases, but at least as against creditors who, upon intervention or otherwise, have become parties to the suit and obtained judgments of allowances, the court can not, without their consent, abdicate its jurisdiction and relegate

them to the pursuit of contract remedies that it has sought to establish for them. It is the principal business of the court in the case to protect such creditors, and to protect them by the exercise of its jurisdiction. It can not rightfully detach their claims from such portion of the trust property or its proceeds as it is necessary to retain to insure the payment of such claims.

The case of *Popper* v. *Scheider,* 7 Abb. Pr. N. S. 56,—a superior court case,—affords the nearest precedent for the procedure of the court below. In that case the defendants made a showing, at the threshold of the proceeding, that the plaintiff had no interest in the property except to the extent of $1,800, plus a share of the undivided profits to an extent not exceeding seven per cent., and that the business would be greatly injured if the receiver were continued. It was held that upon an offer to pay in said sum of $1,800, and to give a bond to insure the payment of the undivided profits, the court could put the plaintiff to the alternative of accepting said offer, or submitting to a discharge of the receiver. The case mentioned is not in point. It appeared that the interest of the plaintiff, over and above the sum of $1,800, was small, and not established, and that great prejudice would result from a continuance of the receivership, and the application was made as soon as the defendants appeared. While the court in that case could not, as was attempted here, have taken a contract on behalf of the plaintiff, it might, perhaps, in view of the circumstances, have rightfully put the plaintiff to his election to accept the offer or submit to a dismissal of his suit, on the principle that he who asks equity must do equity. It is not necessary to approve the case cited. It suffices to distinguish it.

Whatever may have been the *status* of the bond given herein as against the obligors, we hold that the making of contracts, not provided for by law, requiring the pursuit of collateral remedies to recover on claims reduced to judg-

ment, is not within the rightful authority of a court of equity. The valid claims of creditors in a receivership must be protected by the receivership. The court below erred in sustaining a demurrer to appellant's exceptions to the final report of the receiver.

Judgment reversed, with a direction to the trial court to overrule the demurrer to said exceptions, and for further proceedings not inconsistent with this opinion.

Dowling, J., did not participate in the consideration or decision of this case.