OIL FIELDS CORPORATION *v.* MEEK.

Opinion delivered November 7, 1927.

1. APPEAL AND ERROR—HEARING ON EXCEPTIONS TO RECEIVER'S REPORT.—In appeal from an order overruling exceptions to a receiver's final report, failure of appellant to present testimony introduced at the hearing on demurrer to exceptions, *held* not to require affirmance under rule 19, providing for embodiment of the whole of the evidence under the transcript, as exceptions were in the nature of pleading, on demurrer to which no testimony was required.

2. RECEIVERS—EXCEPTIONS TO FINAL REPORT—DEMURRER.—A demurrer to exceptions to a receiver's final report admits as true all facts set forth in the exceptions which are well pleaded.

3. RECEIVERS—EXCEPTIONS TO REPORT.—Where exceptions to a receiver's report set forth facts showing good reason why the report should not be confirmed, a decree overruling the exceptions and confirming the report was erroneous, notwithstanding some parts of the exceptions were not sufficiently specific, and contained mere conclusions.

4. RECEIVERS—EXCEPTIONS TO REPORT.—Exceptions to the final report of a receiver, alleging his failure to keep an accurate record, or to show expenses incurred, and alleging neglect of affairs of the corporation, and misconduct in handling its funds,

*held* as against demurrer, to state a case for rejection of the receiver's report.

5.  RECEIVERS—EXCEPTIONS TO REPORT.—Where exceptions to the final report of the receiver of a corporation were defective in part because they alleged conclusions, the remedy was to require the pleader to make his allegations more specific.

6.  RECEIVERS—EXCEPTIONS TO REPORT—REFERENCE.—Where facts alleged in exceptions to a receiver's report as true were sufficient to prevent its confirmation, the chancellor should appoint a referee to take testimony in order to determine the truth of the facts alleged.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

*Albert L. Wilson,* for appellant.

*H. E. Meek* and *L. B. Smead,* for appellee.

WOOD, J. On the 10th day of March, 1924, J. H. Meek was appointed receiver in a case pending in the chancery court of Ouachita County, in which Frank W. Lowe was plaintiff and Gordon Ingalls and others, including the Oil Fields Corporation, were defendants. J. H. Meek duly qualified as receiver by taking the oath and executing a bond as such receiver in the sum of $100,000, which had been fixed by the court in that sum. As a result of the litigation, the Oil Fields Corporation was adjudged to own certain properties, consisting of oil and gas leases, producing oil wells, oil in storage, and equipment of the leases. As receiver, Meek was directed to take an inventory of the property and to continue the business of managing and operating the property during the litigation, and was authorized to do any and all acts to properly conduct such business under the orders and directions of the court. Among other directions was the following:

"The receiver is ordered and directed to make a report of all his acts as receiver herein, on or before the first day of each succeeding month hereafter, said report to be filed with the clerk of the Ouachita Chancery Court, where it shall remain and be in the files of said court, subject to the inspection of all parties in interest."

On the 19th day of May, 1924, the receiver filed a report, in which he had made an inventory of the assets

and liabilities of the Oil Fields Corporation, and stated the total value of the property involved in the litigation to be $311,855.29, against which were bills and accounts payable in the sum of $85,934.03. In this inventory the oil storage was estimated at 190,523.66 barrels, of the value, at that date, of $1 per barrel, which the receiver was disposing of, the same being run through the Standard Pipe Line Company at the rate of 5,000 barrels a day. The total assets above included accounts receivable in the sum of $80,281.91, $75,000 of which the receiver reported was due from the Arkansas Pipe Line & Navigation Company, which was of remote and doubtful value, as that company was in a state of bankruptcy. Among other items the receiver reported that the McKenzie and Laney leases were producing 800 barrels of oil per day, of the value of $1 per barrel. The report is too voluminous to set out in detail, and it is unnecessary to do so. The above are the salient features thereof. The court approved the report, embracing the inventory of the property, on May 19, 1925.

The first monthly report embraced the operations of the receiver from March 11, 1924, to March 31, 1924. In this report the receiver stated that he expected to run from 100,000 to 125,000 barrels per month, pipe-line oil, at $1 per barrel, during the month of April; that the leases in his hands were making on an average from 800 to 1,000 barrels of oil per day, and he stated that he would thereafter make regular monthly reports and file the same with the clerk of the court. The receiver thereafter made reports covering his management each successive month to and including July, 1925. The last report showed receipts for the month of July in the sum of $41,809.99, and the report for the month of April, 1925, showed that the receipts were $24,569.08. The report ending July 31, 1925, included an "accumulative trial balance for the general ledger period," showing the debits and credits to be $404,109.61. This accumulative trial balance showed that the oil sales were $372,176.41, gas sales $647.58, and miscellaneous earnings $4,526.81.

On August 19, 1925, being the third day of the August term, the court entered the following order: "Now on this day comes the receiver herein, by his attorneys, and files herewith the report of the receiver in this cause, which is by the court in all things approved."

The only other report that had been approved up to this time was the report for the month of October, 1924. The report for October, 1924, showed the total oil production for that month to be 28,855.43 barrels and the total sales to be $17,470.82. The record shows that the receiver filed what are designated "accumulative trial balances" from the general ledger, for various periods from month to month. We have examined these statements from the receiver's report in the record. They are so confused it would require an expert accountant to determine their accuracy. The last report of the receiver, embracing the period ending December 31, 1925, and the trial balance from the general ledger ending at that time, showed the receipts to be $446,863.83, and a supplemental report was filed in vacation showing that, after all receipts and disbursements, the receiver had on hand at that time $27,456.51.

The final report is too lengthy to set forth in detail. It states that the receiver took charge of the property on March 24, 1923. Then there is a general statement to the effect that he had filed from month to month current financial statements, and a general statement to the effect that the receiver had managed the properties intrusted to his hands to the best of his ability, in a business-like manner, and that he had turned over all the property in his hands under the orders of the court to the Oil Fields Corporation. He refers to the cash on hand as shown by his report of December 31, 1925, and the remainder of the report explains in detail the various items set forth in his "accumulative trial balance from the general ledger," covering the period ending December 31, 1925, and referred to as Exhibit A, with schedules attached numbered from 1 to 10 inclusive.

The Oil Fields Corporation, on January 25, 1926, filed exceptions to the final report of the receiver. The exceptions are paragraphed and numbered from one to twelve, inclusive, the substance of which we will set forth.

No. 1 denies that the receiver took charge of the property on March 24, 1924, but alleged that he took charge on or about March 11, 1924.

No. 2 consists of general denials of the allegations of the report as to the faithful and correct manner of the management of the property, and denies that the statement or exhibit attached to the receiver's report showed the amounts of cash the receiver had on hand on December 31, 1925.

No. 3 sets up that, at the time the receiver took charge, the oil in storage amounted to fully 500,000 barrels and that the wells were producing at least 1,500 barrels per day; that these wells continued to produce during the entire period of his receivership more than 1,000 barrels per day, and that the amount of oil produced during his receivership was fully 1,130,000 barrels, whereas the receiver reported that he had received only 489,619.78 barrels. It was alleged that it was the duty of the receiver to keep an accurate daily record of the oil in storage and that produced, which the receiver had not done, and asked that such record be produced.

No. 4 alleged that the receiver had failed to return the furniture, fixtures, books and records of the Oil Fields Corporation in his possession as he had been directed to do by order of the court. It was alleged in this paragraph that, if the receiver procured an order of sale of this furniture, it was without notice to the corporation, and that each of the orders made by the court approving the action of the receiver in any manner was without a hearing and without notice to the corporation; that these orders of the court, being without notice or hearing, were obtained for the purpose of being used as a shield upon final settlement of the receiver.

No. 5 begins with general allegations that the manner of bookkeeping by the receiver was defective and

therefore the books do not show the funds that were recklessly given away, belonging to the defendant, and do not show the necessary expenses incurred by him. This paragraph specifies the following items: $20 given away as pretended rentals due on the Telford lease for the year ending December, 1926, when the lease expired by its terms December, 1925; for stenographer and bookkeeper $6,387.76; J. H. Meek $2,750; H. C. Compton, $500; L. J. Wardlaw $500; H. C. Compton $500; L. J. Wardlaw $500; H. C. Compton $250; L. J. Wardlaw $250; Compton & Wardlaw $500; Compton & Wardlaw $2,000; Smead & Meek $150; Smead & Meek $6,000; Smead & Meek $2,000; Smead & Meek $4,000; L. B. Smead $1,800; all of which items and many others, it is alleged, were an improper charge against the funds in the hands of the receiver, and, if said receiver obtained an order of the court directing said payments, he did so without presenting the facts, or informing the court in the premises, and without any notice to this defendant, and the procuring of such an order from the court by said receiver was a violation of his duty and a fraud upon this defendant; that most of the items specified are for compensation for pretended legal services rendered the receiver, and this defendant alleges that said attorneys instituted or prosecuted or defended no suits of any kind whereby the estate in the hands of the receiver was benefited in any manner whatsoever. This paragraph then sets forth that the only litigation pending against the receiver for the property in the hands of the receiver was a proceeding in bankruptcy in the Federal court at Texarkana, which was successfully defended by Albert L. Wilson, general counsel of the defendant, and all any attorney for the receiver had to do was to copy motions filed by said Albert L. Wilson and submit them to the court upon the proof and argument already made by the said Albert L. Wilson; that one member of the firm of said Smead & Meek is a brother of the said J. H. Meek, receiver, and the other member of said firm is L. B. Smead, to whom the $1,800 is reported to have been paid.

No. 6 sets out specifically that the receiver had not fully paid the sum of $1,800 on the McKenzie lease and the sum of $3,224.20 on the Laney lease, which he reports had been fully paid; that a lien was claimed on these properties for the sum of $135, which, if the receiver had paid to the wrong person, would result in a loss of that sum to the defendant.

No. 7 charges specifically that a large quantity of two-inch pipe, worth $2,000, was taken possession of by the receiver, under order of the court, and was subsequently sold by him without any order of the court, and was not listed in the receiver's inventory. This paragraph also alleges that the receiver had permitted other parties to use an engine belonging to the defendant, worth more than $1,000, and to remove same from the property, for which the receiver had failed to account.

No. 8 alleges that the receiver had permitted large sums of money to be kept on deposit in the First National Bank at Camden on which he should have collected at least 4 per cent. interest for the benefit of the defendant; that the receiver was a director in this bank, and had failed to collect any interest on these deposits, or, if he had collected the same, he had appropriated the same to his own use and failed to charge himself therewith. This paragraph asks that the receiver be required to set forth the rate of interest the bank pays on time deposits, and that he be required to charge himself with the interest on the daily balance on deposit to his credit as receiver at the rate of 4 per cent. per annum.

No. 9, in substance, charges that, at the time the receiver took possession of the property, the Arkansas Pipe Line & Navigation Company was indebted to the defendant in the sum of $75,000; that at that time the receiver herein was also the receiver of the pipe-line company; that a bankruptcy proceeding was instituted against the pipe-line company, and J. H. Meek turned over all property and assets of that company in his hands as receiver of such company into the bankruptcy proceeding about the time he was appointed receiver for this

defendant company; that the pipe-line company owned property at that time of the value of $480,000, and its total indebtedness would not exceed $285,000; that the pipe-line company was not insolvent, and could not be properly adjudicated a bankrupt; that J. H. Meek, as receiver herein, failed to present the facts to the bankruptcy court, as it was his duty to do, and that, by his willful neglect to defend against the bankruptcy proceeding, he caused a loss to the defendant herein of its entire account against the Arkansas Pipe Line & Navigation Company in the sum of $75,000, except the sum of $3,476, which he claims to have received from the trustee in bankruptcy, causing a loss to the defendant, with which the receiver should be charged.

Paragraph No. 10 alleges that the receiver took credit for $622.79 as an uncollectable account; that such account is not charged to him, and therefore he should have no credit for the same. The balance of this paragraph is a general exception to each item of the receiver's report as contained in Exhibit A with its schedules, except the $50,000 advanced to the defendant.

Paragraph No. 11 alleges that the receiver willfully had well No. 9 on the McKenzie lease sealed off after it had encountered a valuable flow of natural gas, which the receiver should have utilized for the benefit of the defendant, instead of paying the sum of $2,000 per month for gas from other sources, and that, by his neglect in this particular, the defendant had suffered several thousand dollars' loss.

Paragraph No. 12 charges the receiver with willfully conducting himself in a manner hostile to the rights of the defendant and with entering into a conspiracy with others to elect a board of directors favorable to the wrecking of the corporation and sacrificing its property at a forced sale. Among the items of misconduct charged against the receiver in this paragraph are the following: "That J. T. Burney, to whom he claims to have paid $10,-482.95, expended much of his time looking after the personal affairs of said J. H. Meek, and habitually neglected

the affairs of the property and business in the hands of the receiver; and that said receiver should be charged with a large part of said $10,482.95, and a large part of the $124,753.80 mentioned in schedule 5 as operating expenses, and with the entire amount of $8,000 claimed by said J. H. Meek in schedule No. 7, for the reason that he has been so reckless, extravagant and unfaithful to his trust that he has forfeited his right to any compensation."

Paragraph No. 13 contains the prayer of the defendant for a referee and the taking of testimony covering all acts of the receiver, and the report of the same, and that the receiver be required to pay the defendant all sums belonging to the defendant now in his hands, and that, upon a final hearing, he be required to pay such additional sums as the court shall find to be due from him upon a strict accounting, etc.

The receiver filed a demurrer specifically as to each paragraph of the complaint, but general in form, alleging that each of such paragraphs "does not contain statements sufficient to constitute a valid exception to the final report of J. H. Meek, receiver." The cause was submitted on a demurrer and the court found that the exceptions of the Oil Fields Corporation to the said reports of J. H. Meek, receiver, failed to state facts sufficient to constitute an exception to said report, and that said demurrer therefore should be sustained. The court thereupon entered a decree overruling the exceptions and confirming the report of the receiver and ordered the receiver to pay over to the corporation the sum of $23,931.06. The corporation appealed from the decree overruling its exceptions, and the receiver appealed from the decree directing him to pay over the sum specified to the corporation.

1. The appellee, Meek, filed a motion to affirm the cause on appellant's appeal because of an alleged failure by the appellant to comply with Rule 19 of the Supreme Court. Rule 19 requires, among other things, that, in chancery cases, "the whole of the evidence shall be

embodied in the transcript, unless the parties shall agree upon an abbreviated statement thereof.'' Appellee sets up in his motion, containing eighteen paragraphs, that certain orders, specifying them, were made by the chancery court, which show on their face that oral testimony was heard upon which the orders were based and that none of this evidence is brought into the record. Counsel for appellee contend that it is impossible to predicate error on the part of the trial court in overruling the appellant's exceptions to the receiver's report unless the testimony is brought into this record upon which the various orders were made by the trial court. A complete answer to this contention is that the cause was heard on demurrer to the appellant's exceptions. The final report of the receiver is not verified. The appellant did not move to have the same verified. It is therefore analogous to an unverified complaint of the receiver asking that his report be confirmed and his account allowed. The appellant's exceptions thereto were duly verified and were tantamount to an answer denying and challenging the matters set forth in the report to which the exceptions were directed.

In *Johnson* v. *Central Trust Company,* 159 Ind. 605, 65 N. E. 1028, it is said: ''The report of a receiver and an exception filed thereto stand as the complaint and answer of the respective parties.'' See cases there cited; see also 34 Cyc. 454-456. The appellee's demurrer to appellant's exceptions admitted as true all the facts set forth in the several paragraphs of these exceptions that were well pleaded. *Green* v. *Williams,* 169 Ark. 1198, 278 S. W. 5; *Hudson* v. *Simonson,* 170 Ark. 243, 279 S. W. 780. On the hearing of the demurrer no testimony could, or should, have been introduced. The demurrer tested the sufficiency of the exceptions as a pleading only, and it was not necessary or proper to adduce testimony to establish facts well pleaded that were admitted by the demurrer. The case of *Remmel* v. *Collier,* 93 Ark. 394, 125 S. W. 422, 130 S. W. 167, upon which the appellee relies to sustain his motion to dismiss, has no application to this record. That was a case where, notwithstanding

there was a demurrer to the complaint, which the court passed upon, the whole case was nevertheless submitted to the court on the merits as well as the sufficiency of the pleadings. To be sure, in that case it was the duty of the appellant to bring the whole record before this court in order to enable the court to determine whether the decree of the court below on the testimony adduced at the hearing on the merits was correct. If such were the case here the contention of appellee's counsel would be sound, but such is not the case. Appellee's motion therefore to confirm the decree, or to dismiss the appeal, is not well taken, and is overruled.

2. This brings us to a consideration of the question as to whether or not the court erred in sustaining the demurrer to the appellant's exceptions and in entering its decree overruling these exceptions and approving and confirming the receiver's report. We have set out above the substance of the different paragraphs of the exceptions to the receiver's final report. It would unduly extend this opinion and we deem it unnecessary to refer specifically again to each paragraph. Some of them unquestionably correctly pleaded facts which show that the court erred in confirming the report of the receiver. The court's ruling reached to each and every paragraph and overruled the exceptions as a whole. This was manifestly erroneous. Some of the paragraphs are too general in their statements, and, on remand of the cause, the court should require the pleader to state facts and not mere conclusions. But other paragraphs, and most of them, do state facts and not mere conclusions of the pleader. Some of the paragraphs state the exceptions in too broad and general terms, but they nevertheless state good reasons why the report of the receiver should not have been confirmed by the court, and such of these paragraphs as stated the exceptions defectively the court should have required the pleader to make more specific, and not overruled the exceptions as a whole. In this connection the language used by the author of the chap-

ter on "Receivers" in 34 Cyc. at page 456, is exceedingly apposite, towit:

"The report of a receiver, and an exception filed thereto, stand as the complaint and answer of the respective parties; the mere *pro forma ex parte* settlement of an important receiver's account, where creditors are dissatisfied therewith, is held to be an indiscretion, and his account will not be confirmed by the court without a reference, and over objection, when the items of expenditures are not accompanied by voucher or supported by other proof. So, on the proceedings before the master the burden is upon the accountants to justify and vouch the accounts which they had rendered, so far, at least, as they were called in question by exceptions; the receiver has been held to great strictness in this respect, and, upon failure to produce vouchers for disbursements, required to give a satisfactory reason for such failure."

We have examined all of the receiver's reports sufficiently to convince us that the chancellor erred on demurrer to the exceptions in sustaining the demurrer and in confirming the final report of the receiver. The chancellor, instead, should have granted the prayer of the appellant as set up in the 13th paragraph of the exceptions, and should have appointed a referee to take testimony concerning the facts alleged in the appellant's exceptions, and directed him to overhaul the final report of the receiver in connection with the various other reports, both those that had been previously approved and those that had not been approved, to the end that the receiver might prove, if he could, that the facts correctly pleaded in appellant's exceptions were untrue; or, if they were true in fact, that the final report might be corrected and confirmed in conformity with the established facts.

The decree of the trial court is therefore reversed, and the cause is remanded with directions to overrule the appellee's demurrer and for further proceedings according to law and not inconsistent with this opinion.