## HEYMAN et al. v. UNITED STATES.

### In re R. M. ROSE CO.

(Circuit Court of Appeals, Sixth Circuit. January 15, 1923.)

No. 3592.

1. **Internal revenue ⚙︎➡12—Interpretation of proviso doing least violence to uniform operation is to be preferred.**

The interpretation of the proviso to War Revenue Act Oct. 3, 1917, § 303 (Comp. St. 1918, § 5986b), relating to payment of the floor tax on distilled spirits in custody of a court of bankruptcy, which does least violence to the uniform operation of the act as a taxing measure, is the one to be preferred.

2. **Internal revenue ⚙︎➡12—Proviso favoring bankruptcy assets in payment of floor tax affects only time of payment.**

War Revenue Act Oct. 3, 1917, § 303 (Comp. St. 1918, § 5986b), imposing a so-called floor tax on distilled spirits, requires the payment of the tax, regardless of whether the owner is an insolvent estate in custody of the bankruptcy court, and the 50-gallon exemption may be claimed only once, regardless of the quantity or number of sales, and not claimed with reference to each sale by a trustee in bankruptcy in quantity less than 50 gallons; the proviso relating to bankrupt estates affecting only the time of payment, and not the exemption.

3. **Bankruptcy ⚙︎➡268—Buyers of liquor as tax-free can recover from trustee in bankruptcy tax they had to pay.**

Where buyers of intoxicating liquor, which was sold to them as tax-free, were compelled to pay the so-called floor tax under the proviso of War Revenue Act Oct. 3, 1917, § 303 (Comp. St. 1918, § 5986b), that such tax on distilled spirits in the custody of a bankruptcy court should be paid by the person to whom the spirits were delivered, they could in equity require the trustees to refund them the amount they were compelled to pay.

4. **Internal revenue ⚙︎➡27(2)—Tax which buyers could enforce against trustee in bankruptcy can be directly enforced by the government.**

Where the government could require the payment of taxes by the buyers of spirits from trustees in bankruptcy, who would be entitled to a refund from the trustees, because the sale to them was tax-free, the circuity of action can be avoided, and the government may recover the tax directly from the trustees, since the amount thereof was represented in the purchase price, which is in effect a trust fund for payment of the tax.

5. **Bankruptcy ⚙︎➡272—Floor tax on whisky sold by trustee is payable before distribution.**

The floor tax on distilled spirits imposed by War Revenue Act Oct. 3, 1917, § 303 (Comp. St. 1918, § 5986b), levied on whisky sold by trustees in bankruptcy, was not a debt of the bankrupt, but was to be paid, as other expenses of administration, out of the estate, before distribution among the general creditors.

Petition to Revise, and Appeal from, an Order of the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

In the matter of the R. M. Rose Company, bankrupt. The District Court entered an order sustaining the claim of the United States against Paul Heyman and others, as trustees in bankruptcy, for war revenue taxes, and the trustees filed a petition to revise and appeal. Affirmed.

---

⚙︎➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Gilbert Bettman, of Cincinnati, Ohio (Jesse M. Littleton, of Chattanooga, Tenn., and L. J. Crawford, of Newport, Ky., on the brief), for appellants.

Geo. C. Taylor, U. S. Atty., of Greeneville, Tenn., and S. Duffield Mitchell, Sp. Asst. in Internal Revenue Dept., of Washington, D. C. (Carl A. Mapes, Solicitor of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before DENISON and DONAHUE, Circuit Judges, and PECK, District Judge.

PECK, District Judge. Two questions are involved in this case. The first is to whom the 50-gallon exemption from the so-called "floor tax" on distilled spirits, provided by section 303 of the War Revenue Act of October 3, 1917 (Comp. St. 1918, § 5986b), applied, when the liquor was held on June 1, 1917, by trustees in bankruptcy, who later sold it at retail. The second is whether the bankrupt's trustees, who so sold it without requiring the floor tax to be paid by the purchasers at the time of sale, and who have received from them what was intended to be the full tax-free price, and now hold the same as a fund in bankruptcy, are accountable to the government for the tax.

The R. M. Rose Company was adjudged bankrupt in May, 1917. It was a wholesale and retail liquor dealer, with a large stock of liquor on hand. Being of the opinion that liquor sold by them in quantities not to exceed 50 gallons was not subject to the tax of $2.10 per gallon, and that by disposing of the stock of liquors at retail they could gain that much additional profit, the trustees applied for and received authority from the referee so to dispose of the stock, but to sell no more than 50 gallons to one person unless they should find it advantageous to do so, in which event they were to report to the collector of internal revenue and require the purchaser to pay the tax on the same at the time of delivery. It is thus apparent that they intended, and the fair implication of the order was, that the retail sales which they should make should be of liquor as tax-free, because only in the event they should sell in excess of 50 gallons to one person should they require the purchaser to pay the tax. It is, however, also apparent that it was regarded as their duty to require payment at the time of delivery of such taxes as were considered to be due.

The trustees proceeded to sell the liquor as tax-free, at retail, largely by the half pint, pint, and quart, selling not to retailers, but directly to consumers. Thereafter the government intervened in the bankruptcy proceedings with a petition and proof of claim against the trustees for the floor tax, which the referee, after a hearing, amendment, and rehearing, allowed in the sum of $52,931, as a lien on the funds in the hands of the trustees; and this was confirmed by the District Judge, and the case is here on petition to revise. The referee found, and this finding was also confirmed by the judge, that the trustees added to the price the sum of $2.10 per gallon, being the amount of the tax, and that they thus collected the tax, not eo nomine, but in effect. This the trustees dispute. But the finding of the referee, who heard the conflicting testimony of the witnesses, was supported

by substantial evidence, and the record here presented does not suffice to overcome the presumption of correctness which attaches to such a finding confirmed by the District Judge. Lamson Bros. v. Turner (C. C. A.) 277 Fed. 680.

The first question is upon the interpretation of the statute. It is as follows:

"Sec. 303. That upon all distilled spirits produced in or imported into the United States upon which the tax now imposed by law has been paid, and which, on the day this act is passed, are held by a retailer in a quantity in excess of fifty gallons in the aggregate, or by any other person, corporation, partnership, or association in any quantity, and which are intended for sale, there shall be levied, assessed, collected, and paid a tax of $1.10 (or, if intendfor sale for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $2.10) on each proof gallon, and a proportionate tax at a like rate on all fractional parts of such proof gallon: Provided, that the tax on such distilled spirits in the custody of a court of bankruptcy in insolvency proceedings on June first, nineteen hundred and seventeen, shall be paid by the person to whom the court delivers such distilled spirits at the time of such delivery, to the extent that the amount thus delivered exceeds the fifty gallons hereinbefore provided."

Three interpretations have been advanced: (1) The trustees of the bankrupt went upon the assumption that the proviso meant that all whisky sold by them in quantities not in excess of 50 gallons was exempt. (2) The Department of Internal Revenue stated that it construed the proviso "to exempt only sales to retail liquor dealers to the extent to which they are not already in possession of spirits for sale to the amount of 50 gallons, upon which the tax has not been paid." (3) Counsel for the government now advance the interpretation that the exemption applies to the vendor, whether a solvent person or a bankrupt's trustee, and that 50 gallons only may be sold by such trustee without payment of the tax, no matter to whom or in what quantity.

[1] Of these interpretations the first would entirely exempt liquor sold by trustees in bankruptcy at retail, because retailers do not sell in excess of 50-gallon lots. The second would make the exemption to depend upon whether the purchaser was a retailer and whether he had theretofore had any of his 50-gallon exemption, thus allowing retailers to buy tax-exempt whisky up to 50 gallons from trustees in bankruptcy, but not from others, after the act went into effect. Either of these interpretations would make the act discriminate sharply in favor of bankrupts' estates as against solvent persons similarly situate. The interpretation which does least violence to the uniform operation of a taxing measure is the one to be preferred. Perry Co. v. Norfolk, 220 U. S. 472, 480, 31 Sup. Ct. 465, 55 L. Ed. 548; Bank v. Tennessee, 161 U. S. 134, 146, 16 Sup. Ct. 1113, 41 L. Ed. 211; Tucker v. Ferguson, 22 Wall. 527, 575, 22 L. Ed. 805.

[2] The purpose of the proviso was merely to obviate the necessity of the immediate payment of the floor tax by the trustee (who would not be likely to have funds so to do), to postpone it until the date of the sale of the liquor, and to require it then to be paid by the purchaser. So far as the amount of the exemption was concerned, the trustee was put upon the same footing as other dealers, retail or whole-

sale, respectively. The words of the proviso, "the amount thus delivered," mean the total amount delivered by the trustee to all purchasers. In short, the proviso goes to date of payment, not to exemption. Therefore it is held that the third interpretation above set forth is the correct one. It follows that the trustees in this case were entitled to a 50-gallon exemption, and no more, and that all of the remainder of the liquor in controversy was subject to tax and should have been so sold. This leads to consideration of the second question, which is whether the trustees are liable to pay the tax out of the funds in their hands.

The tax was, by the act, to be paid by the person to whom the court delivered such distilled spirits, at the time of delivery. This law was as binding upon the court making the delivery as upon the purchaser; consequently it should have been by the referee's order made the duty of the trustee to deliver no whisky (except of the exempt 50 gallons) unless the tax was contemporaneously paid, and to declare the terms of sale and make known to the purchasers that the liquor was sold subject to that condition. But in this case the trustees did not so declare. Although they were early advised that the Commissioner's ruling was that liquor sold by them to consumers would be subject to the tax, they persisted in the idea that they had, under the act, an advantage of $2.10 per gallon which they were entitled to gain by selling the liquor tax-free. For the declared purpose of obtaining this advantage they did, under an erroneous ex parte order of the referee, made on their application and to which the United States was not a party, sell the liquor as and for tax-free, and the purchasers bought it as such. The latter paid for it, in addition to the price they would have paid had the sale been properly made, an amount equal to the tax. This the trustees in bankruptcy received, and the fund is now in court for distribution to whomsoever it justly belongs.

[3] The purchasers may no doubt still be subject to the tax, although the trustees have made collection from them impracticable by failing to preserve a list of their names. But if the government, intervening in the bankruptcy case, should at this time seek to subject a purchaser to the tax, as one of the terms of sale, he would answer that the whisky was sold to him as tax-free, and that he had paid the amount of the tax to the trustees, and that if he must now pay it to the government, the trustees should be required to refund the amount to him. His position would be just, and the court could not decline to allow it. Brown v. Timmons, 110 Tenn. 148, 72 S. W. 958. To do otherwise would be to make him pay the tax upon that which the court had sold him as tax-free. Thus the fund would ultimately be subject, in equity, to the payment of the tax. This right the government seeks directly to enforce.

[4] Circuity of action is unnecessary, and especially so where the bringing of intermediate action has been made impracticable by the defendant's error. In good conscience the court could not make the purchasers pay the tax again, nor can it permit the trustees to retain the fund accumulated under an erroneous order of sale contrary to the rights of the government, which was then no party to the proceed-

ings. Further, in conscience, the government is entitled to this fund. It does, in effect, represent the tax. It is, as held by the court below, a trust fund. Pomeroy, Eq. Juris. (3d Ed.) § 1047.

[5] As this obligation of the trustees was one that arose during the administration of the estate, and was no debt of the bankrupt, it is to be paid, as other expenses of administration, out of the estate before distribution among the general creditors. The court of bankruptcy had power to decree the fund to whom it equitably belonged (Bardes v. Bank, 178 U. S. 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Re Rochford, 124 Fed. 182, 59 C. C. A. 388), and, in ordering so much thereof as represents the tax paid to the government, has done so.

Therefore the judgment of the court below is affirmed.