## CHICAGO JOINT STOCK LAND BANK v. MINNESOTA LOAN & TRUST CO.
### No. 9192.

Circuit Court of Appeals, Eighth Circuit.
March 7, 1932.

L. M. Staples, of Minneapolis, Minn. (Cobb, Hoke, Benson, Krause & Faegre, of Minneapolis, Minn., on the brief), for appellant.

M. H. Boutelle, of Minneapolis, Minn., for appellee.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

This appeal is from an order of the lower court refusing appellant permission to file claim with the receiver of the Flour City Fuel & Transfer Company.

In December, 1918, L. R. Arnold and Amy Arnold, his wife, borrowed from appellant $43,000. To secure this loan they gave a mortgage on an improved farm of 500 acres in Woodbury county, Iowa. By the terms of the mortgage, the indebtedness which it secured was to be repaid on an amortization plan, calling for the payment of sixty-five semiannual installments of $1,505 each, with a final installment of $1,256.89; the last installment maturing December 15, 1951. The mortgaged land was conveyed to certain grantees who in turn conveyed same to the Flour City Fuel & Transfer Company. By the terms of these successive grants, the respective grantees assumed the payment of the mortgage indebtedness.

In May, 1926, in proceedings brought in the lower court by the creditors of the Flour City Fuel & Transfer Company, receivers were appointed for the administration and liquidation of the affairs of that company. The receivers originally appointed functioned until April, 1930, when a petition was filed by creditors seeking their removal. On the hearing of this petition for removal, each of the receivers tendered his resignation, and on April 29, 1930, the court appointed the Minnesota Loan & Trust Company, the appellee, as successor receiver.

After the appointment of receivers, the court, on June 14, 1926, entered an order requiring all creditors to file their claims within three months after the date of the order, or be forever barred. The appellant acquired notice of the receivership proceedings on or about July 12, 1926. No claim was filed by it, nor was any claim asserted against the estate until November 4, 1930, when it filed in the lower court its petition for permission to file its claim in the sum of $13,503.39, with interest.

On January 4, 1927, the receivers filed petition for authority to pay $4,460.52, due and unpaid on account of installments of interest, taxes, abstract fees, and court costs, the last being incurred by the Chicago Joint Stock Land Bank in proceedings brought in the District Court of the United States for the Northern District of Iowa to foreclose this mortgage. This payment was authorized by order entered January 5, 1927, and was actually made by the receivers.

On August 26, 1929, the receivers filed petition for authority to pay the Joint Stock Land Bank $1,505, on account of installment of interest on this mortgage. In this last-named petition it was alleged that the petitioners, on or about the 15th of August, 1929, had two competent appraisers appraise the property covered by this mortgage, and that they fixed the value at $62,500; that the property was incumbered by a second mortgage dated September 25, 1919, in the sum of $25,000, but that the receivers were of the opinion that there was an equity in the property of approximately $25,000 over and above the first and second mortgages. By order dated and entered August 26, 1929, the receivers were authorized to make this further payment of $1,505, together with such other sums as might be due for taxes and other expenses in connection with the property.

On March 17, 1930, a petition was filed seeking authority to make still further payments on this mortgage debt. This petition is similar to the prior ones, sets out the amount of incumbrances on the property, and realleges that a recent appraisal shows the property to be worth $62,500. A hearing was ordered on this petition after notice to creditors, and on April 1, 1930, an order was entered denying the application and ordering the receivers to make no further payments on account of installments due or failing due on the mortgage covering this farm, or on taxes upon same.

Under date April 24, 1930, the Chicago Joint Stock Land Bank applied for leave to join the receivers of the Flour City Fuel & Transfer Company as parties defendant in a foreclosure suit then pending in the United States District Court for the Northern District of Iowa, entitled Chicago Joint Stock Land Bank, a corporation v. L. R. Arnold, et al. This application does not

assert any personal liability against the Flour City Fuel & Transfer Company, or its receivers.

Appellant's motion for leave to file its claim was based upon its verified petition, in which it is alleged that, because of the failure to pay the semiannual installment due on its mortgage December 15, 1929, it had declared the entire sum of principal and interest unpaid, in default, and due,' and that it had foreclosed its mortgage by action in the federal District Court of Iowa in and for Woodbury county, such foreclosure action being commenced in April, 1930, and in which action there was named as defendants L. R. Arnold, Amy Arnold, Flour City Fuel & Transfer Company, and J. D. Ekstrum and P. F. Herrly, as receivers for said Flour City Fuel & Transfer Company. That the appellant here did not foreclose its mortgage until said time because it was not advised that the court had refused to permit said receivers to pay the installments and interest due on said mortgage until March 29, 1930. That no answer was interposed by the defendants, or either of them, and that on September 10, 1930, the court entered its decree of foreclosure "wherein it was decreed that your Petitioner have judgment for the sum of $40,211.76, with interest thereon at the rate of eight per cent. from September 8, 1930, together with attorneys' fees and costs, and wherein it was further found that said judgment was a first lien on the real estate above described, and wherein the said court decreed that said real estate be sold and that the proceeds of said sale be applied against said judgment." It is then alleged that the mortgaged property was sold under foreclosure decree October 21, 1930, for the sum of $17,500, leaving a balance on the judgment of $13,503.39. (Mathematics not ours.) Certain letters written by the receivers to the appellant and made a part of the showing in support of appellant's petition are referred to as sustaining its claim that it believed the receivers intended to pay the mortgage indebtedness.

From the order of the court denying this application, this appeal has been prosecuted, and it is urged that the court abused its discretion in denying the application.

The court having taken the property of the Flour City Fuel & Transfer Company into custody, through the appointment of receivers, it was proper to require all persons having claims to participate in such property to come into court to prove their demands, and to fix by order the time within which such claims should be presented. An orderly administration of the property necessitated that the court ascertain who the claimants were who sought to participate in it, and the amount and extent of their claims. It is the approved practice to fix by order of court the time within which such claim may be presented, and to give notice thereof by publication or otherwise, that all who desire to present claims must present them within the time specified, and that all who fail so to do shall be thereby barred from any interest in the property in the hands of the court, or in its proceeds. Chicago, R. I. & P. Ry. Co. v. Lincoln Commission Co. (C. C. A.) 284 F. 955; United States v. Middle States Oil Corp. (C. C. A.) 18 F.(2d) 231, 57 A. L. R. 848; Smith v. Jones Lumber, etc., Co. (D. C.) 200 F. 647.

[2] Appellant made no effort to file its claim until some three years subsequent to the expiration of the time fixed for filing such claims in the receivership. The nature of this claim has been loosely referred to as a deficiency judgment. There was nothing before the lower court to warrant the assumption that appellant ever acquired a deficiency judgment against either the Flour City Fuel & Transfer Company or its receivers. There were named as parties defendant in the foreclosure suit the original makers of the note, also the Flour City Fuel & Transfer Company, and its receivers. The allegation in the petition forming the basis of appellant's motion for leave to file its claim in the receivership is to the effect that it was decreed in the foreclosure case that petitioner have judgment for $40,211.-76, and that the judgment was a first lien on the real estate described. As has been observed, it was alleged in this same petition that the property was sold under execution for $17,500, leaving a balance on the judgment of $13,503.39; but there is no allegation that this judgment was a personal one against either the Flour City Fuel & Transfer Company, or its receivers. As they were all residents of the state of Minnesota, and did not answer or make any appearance in the foreclosure case, and there is no evidence that they were served within the jurisdiction of the United States District Court for the Northern District of Iowa, no personal judgment could have been rendered against them, so that it is erroneous·to assume that the claim asserted is in the nature of a deficiency judgment.

Up to the time of the filing of the application for leave to file this claim, the court administering this trust had no advice that any such claim would be presented, and it appears affirmatively that the administration of the estate proceeded upon the assumption that no such claim would be presented. The applications made to the court for leave to make payments of interest installments disclosed at that time that recent appraisals placed the value of this property at $62,500. The mortgage was a first mortgage and the property at the time the mortgage was taken was at least deemed by the appellant to have been worth presumably a great deal more than the amount of the mortgage, and there had been paid in interest and installments something like $27,235 before the foreclosure. When the appellant asked leave of the court to join its receivers and the Flour City Fuel & Transfer Company as defendants in the foreclosure suit it did not even then disclose that it was its purpose to hold the estate liable on any alleged contract by which the Flour City Fuel & Transfer Company assumed this mortgage indebtedness. The foreclosure proceedings resulted in a default decree. The appellant seems to have bid in the property, and by this act fixed, or attempted to fix, the amount of its claim against the receivership estate. The record indicates that the property has a value of $62,500, and the receivers, after investigation and after having the property appraised for the purpose of enabling them properly to execute their trust, represented to the court that it had a value over and above all mortgages of about $25,000.

The mere fact that appellant was able, in a default foreclosure proceeding in which it was plaintiff, to buy in the property for a comparatively small amount may not have impressed the lower court as a criterion by which it could, as a court of equity, and in justice to all the creditors of the receivership estate, recognize appellant's claim as a just one. It had by its own act in bidding in this mortgaged property attempted to determine, if not create, its claim against this estate. It has received something over $27,000 and an improved 500-acre farm, appraised as late as 1930 at $62,500, for an original loan of $43,000. It joined in its foreclosure the original makers of the note and mortgage, and we may presume it has a personal judgment against the makers of the note, who, in the absence of any proof to the contrary, will be presumed to be solvent.

It is urged that appellant delayed presenting its claim because of the payments made by the receivers and the letters which it received indicating that it was the intention of the receivers to pay off this mortgage. But it is to be noted that the time for filing claims had already expired before any of the letters referred to were written, and before any of the payments were made, so that it cannot be said that appellant was misled to its prejudice by these acts of the receivers. It had knowledge of the receivership and was charged with notice that the receivers could act only pursuant to order of court. It also was placed upon inquiry as to all proceedings taken in the receivership matter, including the order limiting the time for filing claims. The application was addressed to the discretion of the court charged with the administration of the trust. Vol. 2, Tardy's Smith on Receivers, § 595; MacDonald v. Ætna Indemnity Co., 91 Conn. 359, 100 A. 32, 33. That court had knowledge of the character and amount and condition of the estate, the nature, number, and amount of all the claims against the estate, and was familiar with all the proceedings had and taken in its administration, and was in better position to judge as to the equities involved than this court can possibly be from the meager record here presented. In disposing of the matter, the lower court, among other things, said:[1] "In this particular case it was assumed at the outset that it would be for the benefit of the creditors to permit the receivers to operate the business in which the company was engaged; in fact, one of the receivers was a managing officer of the company at the time of receivership, and the other was an officer of one of its large creditors. At the time that the receivers applied for permission to pay further installments upon the mortgage herein referred to, the court was not advised that the mortgagee claimed that the defendant company was liable for payment of the mortgage indebtedness or that it was looking to the estate for reimbursement in case its mortgage security should prove insufficient. Although the mortgage was then in default, no claim had been filed with the receivers, and, so far as the court was advised, the only question to be determined was whether there was an equity of any val-

---

[1] In order denying leave to file claim.

**74**

ue in the Iowa land. * * * If the petitioner intended to hold this estate liable for payment of the mortgage, it should have filed its claim within the time fixed by the order. Had it done so, the whole course of this receivership might have been different. It is conceivable that the receivers could, at an earlier time, have disposed of the Iowa lands. It is a matter of common knowledge that the market conditions in respect to farm land have become steadily worse. Furthermore, had the claim been on file at the time the court refused its permission to make further payments under the mortgage, the court's action might not have been the same."

The court concluded that it would not be just or equitable to the other creditors to permit the filing of this large claim.

In MacDonald v. Ætna Indemnity Co., supra, the Supreme Court of Connecticut, referring to claims of this character, said, inter alia: "This record does not purport to acquaint us with all of the circumstances bearing upon the exercise of the court's discretion in refusing to extend the time; and, in view of all the circumstances, we cannot say that the refusal to extend the time was unreasonable, or was an abuse of the legal discretion of the court."

We cannot say that the court abused its discretion in denying this application, and the judgment is therefore affirmed.