McCOLGAN, Franchise Tax Com'r of California, v. MAIER BREWING CO. et al.
No. 10257.

Circuit Court of Appeals, Ninth Circuit.
March 10, 1943.

386

Earl Warren Atty. Gen., of California, and H. H. Linney and R. S. McLaughlin, Deputy Attys. Gen., of California, for appellant.

Bailie, Turner & Lake and Allen T. Lynch, all of Los Angeles, Cal., for appellee H. F. Metcalf, trustee.

Baldwin Robertson, of Los Angeles, Cal., for appellee Maier Brewing Co.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an order in bankruptcy disallowing appellant's claim for corporate franchise taxes.

In June 1932 an involuntary petition was filed against Maier Brewing Company and a receiver appointed with authority to manage and operate the business and property of the alleged bankrupt. The receiver and his successor, the latter being appointed in 1935, operated the business until September 10, 1938. Appellant, Franchise Tax Commissioner of the state of California, asserts that during this period franchise taxes based on net income were assessable under the state Bank and Corporation Franchise Tax Act, Stats.1929, p. 19, as amended.

Each year, except in 1935, taxable net income was derived by the receivers from their operation of the brewery. Although the receivers paid federal taxes on this income they paid to the state only the minimum tax of $25.00, presumably in the belief that since the corporation itself was inactive the franchise tax was not owing. The first receiver wrote across the face of the initial corporate return the statement: "Corporate powers suspended by the United States District Court * * * in Re Maier Brewing Company, No. 18884-H, Myron H. Wells, Receiver in Bankruptcy." Later in the same year he wrote the Commissioner asking if any franchise tax was owing, stating that the company was in receivership and that "no operations have been carried on by the corporation." The Commissioner replied that the tax liability had been satisfied by the payment of $25.

The return made for 1934 was treated substantially in the same manner, the receiver returning the form in blank except for the notation, "in bankruptcy receivership no business transacted." The Commissioner wrote for additional data, to which the receiver replied that he was the federal receiver of the company in bankruptcy and "I am not operating the corporation and the Maier Brewing Company's corporate powers were suspended at the date of my appointment." The second receiver pursued the practice of his predecessor, paying only the minimum annual tax necessary to keep the corporate charter alive.

The Maier Company was not adjudicated a bankrupt. On September 10, 1938, a plan of composition was approved by the court and the business and property of the company were turned back to it. All creditors and interested parties had been ordered to appear and show cause why the petition for confirmation of the composition plan should not be granted. In October 1938 the court approved the receiver's final report and account and authorized him to pay the remaining obligations as set forth in the report. The report did not list any obligation for state franchise taxes, nor was any claim made therefor. During the course of the proceedings numerous notices were published in Southern California newspapers, pursuant to court order, directing all persons having claims to present them. In March 1939 the involuntary petition was dismissed and the proceedings regularly terminated.

The corporation conducted its own affairs until December 4, 1940, when its creditors petitioned for corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and procured the appointment of a trustee. In February 1941 appellant filed with the trustee a claim for franchise taxes due for the taxable years 1933 to 1937, inclusive, and also for the year 1939. Objections to the claim, interposed by the trustee and the debtor corpora-

tion, were referred to a special master. The latter recommended allowance of the claim for taxes accruing after discharge of the receiver but recommended disallowance of the balance. He found that the Commissioner had notice of the prior proceedings in bankruptcy and of the fact that the receivers were operating the business and property of the corporation. He found further that there was neither fraud nor any claim of fraud on the part of the receivers in respect of their franchise tax returns. He concluded as a matter of law that the claim was barred by failure to present it in the former proceedings.

On appellant's objections to the master's report the court reopened the matter and permitted further testimony to be taken in explanation of statements made by one Bondeson, an employee of the Commissioner in charge of the Los Angeles office. Bondeson had testified before the master that his department had information during the taxable years that the brewery was being operated under the receivership. In a memorandum the judge expressed the opinion that Bondeson had not intended to testify as he did before the master, and that Bondeson did not in fact have personal knowledge that the receivers were operating the business. However, the court stated that in all other respects the record supported the master's findings.

■ It is to be noted that the judge did not reject the finding that the Commissioner had notice of the receivers' operations; his conclusion was that the witness Bondeson did not have personal knowledge thereof. The general finding as to knowledge appears to have been left undisturbed. The complete record of the proceedings before the master has not been brought up for review and we are unable to determine whether or no there was other evidence supporting the finding of notice. The burden of establishing error in the findings rests upon appellant. Accordingly, on this fragmentary record we are obliged to accept the general finding on the point.

■ It is conceded that under the act of June 18, 1934, 48 Stat. 993, 28 U.S.C.A. § 124a, the receivers were subject to the state tax applicable to the corporate business the same as if such business had been conducted by the corporation itself.[1] The primary question thus is whether the court was right in holding the claim barred by the failure seasonably to present it. While the Commissioner has argued to us that the returns of the receivers were fraudulent, the findings below preclude that question; and in any event we are not here concerned with the possible liability of these court officers for misconduct. We do not discover in the record before us any unconscionable circumstances which might tend to excuse the laches of the Commissioner or serve to make this case an exception to the general rule that the failure to present known claims necessarily results in their preclusion. Chicago Joint Stock Land Bank v. Minnesota L. & T. Co., 8 Cir., 57 F.2d 70.

■ The taxes accruing as a consequence of the operation of the business by the receivers were expenses of administration.[2] They were not provable debts owing by the corporation itself, but were obligations of the receivership. In respect of the payment of administrative expenses, the statute (11 U.S.C.A. § 102, sub. a) provides that unless other provisions for their payment are made they shall be "reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred." No other provision was made for the payment of these expenses. Thus the liability of the estate was dependent upon their being reported and their payment directed by court order.

■ Upon confirmation of the plan for composing the debts of the Maier Brewing Company, the receiver was discharged and the property unconditionally turned back to the corporation. Does the property so returned remain liable for debts incurred by the receiver in the course of administration? We understand not, unless the court has so directed.[6] The general rule is thus stated in Clark on Receivers (2nd edition 1929), page 108, volume 1: "The effect of the discharge of a re-

1 Gillis v. California, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199; Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442.

2 Remington on Bankruptcy, Vol. 2, p. 231; Heyman v. United States, 6 Cir., 285 F. 685; Hammond v. Carthage Sulphite Pulp & Paper Co., 2 Cir., 8 F.2d 35; Central Vermont Ry. Co. v. Marsch, 1 Cir., 59 F.2d 59; Prudential Ins. Co. v. Liberdar Holding Corporation, 2 Cir., 74 F.2d 50; People of State of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136.

ceiver and surrender of jurisdiction over the trust, without any reservation as to existing claims, is to release not only the receiver, but, also, the property from further liability." [3]

There is no sufficient showing here that the state's claim is entitled to special treatment. The tax officials had actual knowledge throughout that the property of the corporation was in receivership. If they did not know that the receiver, as distinguished from the company, was operating the business, the slightest inquiry would have served to reveal that fact. The master found that the Commissioner had not been misled by the receivers' reports and the orders and files of the bankruptcy court were at all times open to the Commissioner's inspection. Persons having demands against the receiver or claiming rights to participate in the estate were repeatedly given notice to come in and make their demands known. It was not until two years after the termination of the receivership, and when the corporation was again in bankruptcy, that the Commissioner bestirred himself. What he then learned he could as readily have advised himself of as early as 1934.

The equities of the state's situation are less appealing than those of claimants who have not slept on their rights. Creditors who participated in the plan of composition effected in 1938 were entitled to be informed what the existing obligations of the debtor were, and what prior claims, if any, were asserted against its property. And those who later extended credit to the corporation on the faith of the composition can hardly escape prejudice if this stale claim were now to be allowed.

██ Appellant contends, however, that he is in a position superior to that of an ordinary claimant in that the franchise taxes, notwithstanding they were not actually assessed, are by the state law made liens against the property of the corporation. He argues that the trustee appointed in the subsequent reorganization proceeding took the property burdened with this statutory lien. The argument is predicated on the verbiage of 28 U.S.C.A. § 124a, above mentioned, providing that "any receiver * * * appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall * * * be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation."

We are not able to agree. It appears to have been the purpose of Congress in enacting this statute to clarify and extend the law in respect of the obligation of active receivers, trustees, and other court officers to pay state and local taxes accruing in consequence of the carrying on of business. Prior to its enactment the law on the subject was in a chaotic condition. Cf. People of State of Michigan v. Michigan Trust Co., 286 U.S. 334, 341, 342, 52 S. Ct. 512, 76 L.Ed. 1136. The statute does not in terms or by implication impair the principle that property in the custody of the bankruptcy court may not be subjected to liens while so held. Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060. Of course if these taxes had been assessed and a claim made upon the receivers for their payment they would, like administrative expenses generally, have occupied a preferred status. But the statute does not dispense with the necessity for making timely demand for their payment in the receivership proceeding. As much now as in the past orderly procedure requires that administrative expenses be settled while the property yet remains in the custody of the court.

It is said that the corporation was unjustly enriched through the nonpayment of these taxes, but we do not know that to be true. The record in the earlier proceeding is not before us; and in any event it is clear that the trustee, as representative of creditors, is in no way disabled from objecting to the allowance of the claim.

Affirmed.

---

[3] Consult Davis v. Duncan, C.C., 19 F. 477; Farmers' L. & T. Co. v. Central Railroad of Iowa, C.C., 7 F. 537; Johnson v. Central Trust Co., 159 Ind. 605, 65 N.E. 1028.