In the Matter of F. P. NEWPORT COR-
PORATION, Ltd., a Corporation,
Bankrupt.

No. 25308.

United States District Court
S. D. California, Central Division.

Sept. 11, 1956.

See also 123 F.Supp. 95.

508

George Bouchard, Los Angeles, Cal., Special Tax Counsel, for Paul W. Sampsell, Los Angeles, trustee in bankruptcy.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Chief, Tax Division, Eugene Harpole, Atty., I. R. S., Los Angeles, Cal., for Internal Revenue Service.

YANKWICH, Chief Judge.

The petition to review the Order of the Referee dated May 28, 1956, disallowing federal income taxes for the years 1952, 1953, 1954 and 1955, heretofore argued and submitted, is now decided as follows:

The said Order is affirmed and the Findings of Fact and Conclusions of Law of the Referee of the same date are adopted as those of the Court.

#### Comment

■ This case comes up for review after a previous Order disallowing taxes for the year 1952 was reversed. United States v. Sampsell, 9 Cir., 1955, 224 F.2d 721. The ground for the reversal was that the Order disallowing the taxes was based upon the Order of Liquidation *and no more*, the Court of Appeals being of the view that the Order of Liquidation alone *does not* determine taxability. Rather what the Trustee does under it should govern the matter. United States v. Metcalf, 9 Cir., 1942, 131 F.2d 677; State Board of Equalization of State of California v. Boteler, 9 Cir., 1942, 131 F.2d 386; California State Board of Equalization v. Goggin, 9 Cir., 1951, 191 F.2d 726, 27 A.L.R.2d 1211.

The Court of Appeals in the prior appeal in the present case referred to both the Goggin and Metcalf cases, although they pertained to state sales taxes. Rightly. And properly so. For the problem before the Court was and is whether the Trustee is *conducting* the business of the corporation. If he does the tax incidence should be the same, whether federal or state taxes are involved.

■ Section 6012(b) (3) of the 1954 Revenue Code, 26 U.S.C.A. § 6012(b) (3) requires a Trustee to make a return. But Sections 13(b) and 15(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 13(b), 15(b) and Section 11 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 11 impose a tax on "the taxable income of every corporation." What is *taxable income* is determined not by the return *required*, but by the nature of the business *transacted*. Goggin case, supra; Metcalf case, supra; United States v. Sampsell, supra. In the decision to which the Court of Appeals referred, In re Owl Drug Company, D.C. 1937, 21 F.Supp. 907, I held that a trustee in bankruptcy *is not* required to pay an income tax *on liquidation*. The approval of this ruling by the Court of Appeals is evident from the fact that the Court returned the instant case for the purpose of additional findings as to what the Trustee was *actually doing* in liquidation.[1]

■■ The Findings which the Trustee filed on the same date as the Order on Review and which are attached as "Appendix A" to this memorandum show that since the Order of Liquidation, the Trustee only received (1) monthly royalty checks on prior leases, (2) sold three small parcels of property with the approval of the Court (see Findings 6 to 16) and, finally, (3) sold all the assets *in gross* to one buyer. Finding 18; In re F. P. Newport Corp., D.C.Cal.1954, 123 F.Supp. 95; appeal dismissed, F. P. Newport Corp. v. Sampsell, 9 Cir., 216 F.2d 344.

Neither the receipt of the royalties on contracts after liquidation, nor the sales constituted doing business. As said in

California State Board of Equalization v. Goggin, supra,

"When the court on March 22, 1946 ordered liquidation of the assets, *the trustee's authority to conduct the business terminated.*" 191 F.2d at page 728. (Emphasis added.)

The obligation of a trustee in bankruptcy who is conducting the business of the bankrupt to pay taxes, both State and Federal, is imposed by Section 960 of Title 28, U.S.C.A., the Judicial Code. See, Palmer v. Webster & Atlas Nat. Bank, 1941, 312 U.S. 156, 157, 163–164, 61 S.Ct. 542, 85 L.Ed. 642; McColgan v. Maier Brewing Co., 9 Cir., 1943, 134 F.2d 385. When a trustee, by order of court, liquidates the business, he *ceases* to conduct it. He is then turning the assets into money for distribution among creditors, as was done in the Owl Drug case, supra. No prior Act, not even Section 52 of the Revenue Act of 1952, required a return from a non-operating trustee in bankruptcy.

■■ The object of the taxing provisions relating to trustees in bankruptcy is to subject the trustee in bankruptcy to the payment of taxes "accruing in consequence of the carrying on of business." McColgan v. Maier Brewing Co., supra, 134 F.2d at page 388. In dealing with trustees or receiverships, courts make the distinction between those aiming to conserve the assets and those which, although not such at first, become "winding-up" projects. See, People of State of Michigan, by Haggerty v. Michigan Trust Co., 1932, 286 U.S. 334, 345, 52 S.Ct. 512, 76 L.Ed. 1136.

■ I cannot believe that the Congress of the United States, by requiring in the 1954 Act, a trustee in bankruptcy to make a return, *whether he is operating the business or not,* intended to charge him with liability for income taxes for purely liquidating activities. The legislative history does not indicate that it was the intention of the Congress to introduce so significant departure from precedent. See 83rd Cong. 2d Sess.S.Rep. 1622 (1954) p. 562. Had it intended to do so, it certainly would have amended Section 960 of the Judicial Code which *imposes* the obligation to pay.

In the absence of a distinct amendment of this section, we cannot interpret the provisions of Section 6012(b) (3) of the 1954 Revenue Act as *impliedly* and *indirectly* amending it, so as to impose the obligation on a non-operating trustee *to pay income taxes.* Even if a plausible argument could be made for subjecting a non-operating trustee in bankruptcy to certain State excise or property taxes, no

---

I. Rightly. For while Section 52 of the Revenue Code of 1939 and Section 52 of the Revenue Act of 1934, which preceded it, (and under which the decision in the Owl Drug Co. case, supra, was based) both require the Trustee in Bankruptcy to make "returns for such corporations in the same manner and form as corporations are required to make returns", the income taxable is not *that of the corporation, but that of the Trustee.* See, Standard Oil Co. v. Apex Oil Corp., 1951, 35 Tenn.App. 225, 244 S.W.2d 176, 31 A.L.R.2d 869, 874–876, Note thereto, 31 A.L.R. 877 et seq.; In re Town Crier Bottling Co., D.C.Mo., 1954, 123 F.Supp. 588, 590. These cases comment and approve the reasoning in the Owl case.

The case was distinguished in Louisville Property Co. v. Commissioner of Internal Revenue, 6 Cir., 1944, 140 F.2d 547, 549–550, and Pinkerton v. United States, 7 Cir., 1948, 170 F.2d 846, 847. But neither of these cases disapproved it. They merely saw in it a different factual situation from the ones before them. In in re Loehr, D.C.Wis., 1950, 98 F.Supp. 402, a conclusion contrary to the ruling in the Owl case was reached without any reference to it. Judge Tehan's decision was based on the decision of Judge Adair in in re Mid America Co., D.C.Ill., 1939, 31 F.Supp. 601, which was approved by the Court of Appeals for the 8th Circuit in State of Missouri v. Gleick, 8 Cir., 1943, 135 F.2d 134. Neither opinion referred to the Owl case, although it preceded it. Evidently, it was not called to their attention. For the Court of Appeals states in its opinion:

"But one case directly upon the point in question is called to our attention in the briefs, and our research has disclosed no other." 135 F.2d at page 137.

cogent reason could be given for subjecting such trustee to the payment of income taxes when, after complete cessation of a business, he liquidates it, under order of court, and converts it into cash for distribution to the waiting creditors.

 Historically, income taxes are levied on the *profits of the owners of a successful enterprise,* not on the dividends paid to the creditors on the "winding-up" and "closing-out" of a defaulted and bankrupt business.

Hence the ruling above made.

## Appendix A

### Findings of Fact and Conclusions of Law

REUBEN G. HUNT, Referee in Bankruptcy.

The objections of the Trustee to the claims of the Director of Internal Revenue for federal income taxes for the calendar years 1952, 1953, 1954, and 1955, came on for hearing before the Honorable Reuben G. Hunt, Referee in Bankruptcy, on July 22, 1955, November 10, 1955, November 14, 1955, November 21, 1955, and May 16, 1956. The Trustee in Bankruptcy appeared by George Bouchard, his Special Tax Counsel, and by Bailie, Turner, Lake & Sprague, General Counsel for the Trustee, and the Director of Internal Revenue appeared by Laughlin E. Waters, United States Attorney, and Eugene Harpole, Attorney for the Internal Revenue Service.

The Court, having heard and considered all of the evidence, oral and documentary, the arguments of counsel, and having considered the briefs filed by both parties, and having filed herein his memorandum opinion, now makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. This is an involuntary bankruptcy proceeding commenced March 25, 1935. The Court appointed and qualified H. F. Metcalf as Receiver in Bankruptcy. An adjudication in bankruptcy was made on January 12, 1937. The assets of the estate consisted principally of real estate in the Los Angeles and Long Beach areas, and a small tract of land in Tulare County, California.

2. During the years 1938 and 1939 the then Trustee in Bankruptcy, as lessor, entered into certain oil leases, pursuant to which the Trustee in Bankruptcy has received monthly certain royalties.

3. The Security-First National Bank of Los Angeles held most of the properties under a trust agreement as security for loans and advances amounting to over one million dollars. Said Bank filed a claim in the bankruptcy proceeding as an unsecured creditor in the amount of $500,000, after crediting what it determined to be the value of the security held by it upon the indebtedness of said bankrupt corporation. Under the declaration of trust executed in 1930 by the bankrupt corporation to said Security-First National Bank, no property could be sold by the Trustee without the price and terms being acceptable to the Bank and all property sold had to have a deed direct from the Bank to the purchaser; this condition continued until the year 1951.

4. On February 13, 1951, the Trustee in Bankruptcy filed a petition in this Court to compromise the claim of said Security-First National Bank. The Referee approved the compromise, and on October 2, 1951, the order of the Referee approving the compromise was confirmed by the District Court.

5. On April 14, 1952, the Trustee in Bankruptcy filed in this Court a petition

---

The "one case" referred to further on in the opinion was In re Mid America Co., supra.

As I am satisfied with the correctness of the ruling in the *Owl* case, which has the approval of the Court of Appeals for the Ninth Circuit, I extend and apply to the facts in this case the principle declared in it and choose not to follow the decisions mentioned which take a contrary view. Additional reasons for such extension appear in the discussion to follow in the text.

for an order of liquidation. A hearing was had on this petition on May 1, 1952, and on May 26, 1952, the Referee in Bankruptcy made an order reading as follows:

"Paul W. Sampsell, Trustee in Bankruptcy of the above entitled estate, having filed herein his verified Petition for Order of Liquidation, and said petition having come on regularly for hearing before Honorable Hugh L. Dickson, Referee in Bankruptcy, on May 1, 1952, at 10:-00 o'clock a. m., the Trustee appearing by his counsel Messrs. Bailie, Turner & Lake by Norman A. Bailie, Esq., George Bouchard, Esq., his tax counsel, and Ralph G. Ritchie, his tax accountant being also present; the Bankrupt appearing by F. P. Newport its President, and L. M. Cahill, Esq., its attorney; Bank of America National Trust and Savings Association, the largest unsecured creditor appearing by Edmund Nelson, Esq., its attorney; and Addie E. Hurlburt Garland, an unsecured creditor, appearing by Hugh Ward Lutz, Esq., her attorney; and oral testimony having been introduced; and the Court having heard the statements of counsel for the Trustee, and the said Bank of America, and the said Bankrupt; and no one appearing in opposition to said petition; and the Court being fully advised in the premises; and it appearing to the Court that notice to creditors of the time and place of the hearing of said petition has been duly and regularly given according to law, and that each and every allegation in said petition is true; that said Trustee is not and has not been for more than one year last past operating the business of the Bankrupt, that the property of the estate has been and is being held *by the Trustee as a trust for the benefit of creditors and not otherwise, that the interest of the creditors requires that said estate should be expedi-*

*tiously liquidated; and that said petition should be granted,*

*It Is Hereby Ordered, Adjudged and Decreed, That said Trustee proceed with all due diligence to sell the assets of said estate either at private or at public auction for cash either in bulk or in parcels as the Court shall from time to time direct, subject to confirmation by the Court, to the end that the assets of said estate may be speedily converted into money, the expenses of administration paid, the residue paid to the creditors as required by law, and the estate closed.*

"Dated this 26 day of May, 1952.
"/s/ Hugh L. Dickson,
"Referee in Bankruptcy"

This order was confirmed by the District Court on November 28, 1952.

6. On or about March 15, 1953, the Trustee filed with the Director of Internal Revenue his federal income tax return for the calendar year 1952, reporting items of income and deductions for the period January 1, 1952, to May 26, 1952; he did not include in income subject to tax moneys received by him subsequent to the order of liquidation. During that period (May 26, 1952 to December 31, 1952), the Trustee received the following amounts:

| | |
|---|---|
| (1) Interest on trust deeds on the sales of property made by the Trustee prior to 1952 | $ 440.37 |
| (2) Oil royalties upon oil leases made by former Trustee in the years 1938 and 1939 | 18,745.76 |
| (3) From three sales of real estate | 77,600.00 |
| (4) Payments on trust deed on sale made in 1950 | 4,510.28 |

On or about January 7, 1954, the Director of Internal Revenue determined a deficiency for the year 1952 in federal income taxes by including in gross income the interest and oil royalties received

subsequent to the order of liquidation, and by holding:

(a) That upon the sales of three properties for a total amount of $77,600 the Trustee realized a net long-term capital gain in the amount of $54,227.12; and

(b) That of the $4,510.28 received in payment of a trust deed, $3,351.20 represented installment sales gain.

In other words, the Director held that there should be added to gross income for the year 1952 the sum of $28,700.49. The Commissioner determined a deficiency in income taxes for the year 1952, based upon the foregoing adjustments, in the amount of $11,391.21. The District Director of Internal Revenue at Los Angeles filed a claim with the Referee in Bankruptcy for the above amount on January 7, 1954.

7. The Trustee filed objections to said claim of the United States on February 5, 1954. A hearing was had upon these objections, pursuant to which the Referee, on March 24, 1954, entered an order disallowing the claim of the United States for income taxes for the year 1952, which order was affirmed by the District Court (Honorable Leon R. Yankwich, Judge) on July 15, 1954.

8. On August 3, 1954, the United States gave notice of appeal to the United States Court of Appeals for the Ninth Circuit. On August 11, 1955, 224 F.2d 721, the Court of Appeals reversed the order of the Referee and remanded the case for such further proceedings as might appear necessary and proper.

9. On May 6, 1955, the Referee entered an order directing R. A. Riddell, District Director of Internal Revenue at Los Angeles, to file on or before June 1, 1955, any claim which the United States might have against the bankrupt estate in addition to the claim filed on January 7, 1954, which was the claim for additional taxes for the year 1952; that order provided that if the Director did not file such claim on or before June 1, 1955, the United States should be forever barred from filing any further claim herein.

10. On or about May 31, 1955, the District Director of Internal Revenue at Los Angeles filed with the Referee a claim of the United States for income taxes for the year 1953 in the amount of $221.19, and for the year 1954 in the amount of $110,571.45. The Trustee filed objections to these claims.

11. On July 22, November 10, 14 and 21, 1955, and May 16, 1956, hearings were had before the Referee on all tax claims. The evidence with respect to the year 1952 was taken separately in view of the remand by the Court of Appeals of the Referee's order affecting the year 1952. Immediately following the evidence pertaining to the year 1952, the Court received evidence pertaining to the years 1953, 1954, and 1955. Subsequent to November 21, 1955, the Trustee, by leave of Court, filed an additional objection to the year 1954, on the ground that the evidence showed that if any tax was owing upon the sale of all of the assets, the liability therefor accrued in the year 1955 and not in the year 1954.

12. On or about March 10, 1956, the United States filed a claim for income taxes for the year 1955 in the amount of $98,799.92. The Government states that this claim is based upon the sale of assets in the year 1954 and is a duplicate of the tax asserted by the Government in the claim filed May 31, 1955 for the year 1954, and is filed for protective reasons.

13. During the year 1952, subsequent to the order of liquidation, the Trustee received interest in the amount of $440.-37 on trust deeds taken upon the sales of property made prior to 1952, and royalty income of $18,745.76 on leases executed by a former trustee in the years 1938 and 1939. The royalty checks were received monthly from the lessors, deposited in the Trustee's bank account, and disbursed upon order of the Court. No oil leases have been negotiated or entered into by this Trustee or his predecessors since 1938 and 1939. The Trustee rented no properties subsequent to the order of liquidation.

During the year 1952 the Trustee sold three pieces of property for a total sales price of $77,600. In each instance the Trustee received an offer from prospective purchasers or real estate brokers; he referred such offers to his attorney, who prepared a return of sale; in each case he advertised the property with the hope of receiving a higher bid at the time of hearing. Each sale was confirmed by the Court. In one instance a higher bid was received in Court than the original bid. The Trustee also received $4,510.-28 in payment of a trust deed taken upon the sale of property which was made in 1950.

14. Upon the sales of the three parcels during 1952, subsequent to the order of liquidation, the Government has determined that the Trustee realized a profit in the amount of $54,227.12, which the Government claims is a long-term capital gain.

15. During the year 1953, the Trustee sold five separate parcels of property; in each instance the Trustee received a bid from real estate brokers; he turned each bid over to his attorney, who prepared a return of sale and submitted the matter to the Court. After receiving each bid, he advertised the property in an attempt to receive the highest bid obtainable, and in one instance did secure a higher bid in open court. All sales were confirmed by the Court.

The Trustee also received in 1953 royalties in the amount of $35,394.65. These checks were received monthly from the lessees under leases executed by a former trustee in 1938 and 1939. The money was deposited in the Trustee's bank account and disbursed upon order of the Court. The Trustee also received interest on trust deeds taken on sales made in 1950 in the sum of $117.85.

16. The Trustee filed his federal income tax return for 1953 on or about March 15, 1954, and disclosed a net income of $737.31. However, he took the position that no income tax was due on that income because of the order of liquidation. The Government has accepted as correct the net income reported by the Trustee in the amount of $737.31, but denies that it is exempt from tax. Accordingly it has determined a deficiency for the year 1953 in the amount of $221.19.

17. The Trustee filed his federal income tax return for the year 1954 on or about March 15, 1955, and showed a loss therein of $7.57. In that return the Trustee reported royalties received during the year 1954 in the amount of $41,-315.52. Under the sale to the Colters of all of the assets in the hands of the Trustee, approved by the Referee in Bankruptcy May 3, 1954, it was provided that royalties received or accrued subsequent to that date belonged to the purchasers. Royalties received by the Trustee in Bankruptcy prior to that date in 1954 amounted to the sum of $14,147.97, and the amount received subsequent thereto was the sum of $27,167.55. These royalties were sent in monthly by the lessees under leases made by a prior trustee in the years 1938 and 1939. The royalty checks were deposited in the Trustee's bank account and disbursed by him upon order of the Court.

The Trustee also reported the amount received from the City of Long Beach as a result of a judgment entered in a condemnation suit involving one lot owned by the Trustee, namely, $2,052. The Trustee also received $59.91 as interest on a trust deed on the sale of property made in the year 1950.

After deductions to which he was entitled, the return showed a loss of $7.57. The Government has allowed additional deductions in the sum of $12,211.75, which would increase the loss as shown on the return by that amount.

18. The only sale made by the Trustee in 1954 was the sale of all of the property remaining in his hands to one Colter. During the year 1953 one William H. Neblett, an attorney in Los Angeles, submitted an offer to the Trustee in behalf of his client Colter to purchase all of the properties in the Trustee's hands except cash for the sum of $350,564.15. A return of sale was made and approved by the Referee; the District Court refused to confirm the sale because there

**514**

were certain conditions attached to it by the purchaser; thereafter Mr. Neblett, in behalf of Colter, made the same offer to purchase all the properties for the same amount but without restrictions or conditions. The Trustee referred this offer to his attorney, who prepared a return of sale, and hearings were held upon such return before the Referee on April 6, 7, 8, and 9, 1954. At the hearing several higher bids were made. Colter finally raised his bid to $407,000, which was the highest bid received, and the Court, by order dated May 3, 1954, confirmed the sale to Colter for the sum of $407,000. This sale was confirmed by the District Court on July 12, 1954. The bankrupt, by his own attorney, on August 10, 1954, filed a notice of appeal from the order of the District Court dated July 12, 1954, confirming the sale. This appeal was dismissed by the Court of Appeals for the Ninth Circuit on November 12, 1954, 216 F.2d 344, upon motion of the Trustee. The bankrupt filed a petition for rehearing on December 11, 1954, and the Court of Appeals for the Ninth Circuit denied said motion on December 17, 1954. On February 11, 1955, the bankrupt filed a petition for certiorari with the Supreme Court of the United States, which petition was denied by said Court March 28, 1955. 348 U.S. 972, 75 S.Ct. 533, 99 L.Ed. 757. On April 18, 1955, the bankrupt filed a petition for rehearing in the United States Supreme Court and on May 9, 1955, the Supreme Court denied the petition for rehearing. 349 U.S. 925, 75 S.Ct. 658, 99 L.Ed. 1257. On May 27, 1955, an escrow which had been opened in September, 1954, at Title Insurance and Trust Company at Los Angeles, California, between the Trustee and the purchaser, Colter, was closed, and on June 1, 1955, the Trustee received the purchase price.

19. There is no tax due for the year 1954 on the royalties received for the reason that the deductions taken and allowed by the Government exceed the royalties and other income received. The only transaction by the Trustee in 1954 which the Government claims is subject to tax is the sale of all the property to Colter. The Government taxes this alleged profit as ordinary income.

### Conclusions of Law

1. *The order of liquidation of the Referee dated May 26, 1952, terminated the Trustee's authority to conduct the business of the bankrupt, and said Trustee was not subsequent to that date carrying on any trade or business or operating said property or business, and is not liable for federal income taxes on receipts by him subsequent to that date. The claim of the Director of Internal Revenue for additional federal income taxes for the calendar year 1952 should be disallowed.*

2. *The order of liquidation of the Referee dated May 26, 1952, terminated the Trustee's authority to conduct the business of the bankrupt, and said Trustee was not subsequent to that date operating said property or business or carrying on any trade or business, and is not liable for federal income taxes on receipts by him, including oil royalties and money received on sales of properties in either of the years 1953, 1954, or 1955. The Trustee did not realize any profit on the sales of properties in 1953, 1954, and 1955. The sale by the Trustee to Colter, which was confirmed by the Referee May 3, 1954, did not become final until 1955. The claim of the Director of Internal Revenue for additional federal income taxes for the calendar years 1953, 1954, and 1955 should be disallowed.*